R. MUÑIZ DE LEÓN, demandante y apelante, *v.* VENTURA CORTÉS, demandado y apelado.

No. 3813.—*Visto:* Marzo 9, 1926. *Resuelto:* Enero 25, 1927.

1. TESTIGOS—DEL EXAMEN—MODO DE TOMAR EL TESTIMONIO—MEMORIA DEL TESTIGO—REFRESCAR LA MEMORIA—MEMORÁNDUMS O ESCRITOS QUE PUEDEN UTILIZARSE PARA ELLO—DECLARACIONES DE LOS TESTIGOS PRESTADAS EN JUICIOS ANTERIORES.—Considerándose las notas taquigráficas de un juicio anterior como tomadas bajo la dirección del testigo, a éste le es permitido refrescar su memoria con dichas notas, cualquiera que sea el tiempo transcurrido entre la fecha de la ocurrencia de los hechos a que se contrae y la fecha en que tales notas se tomaron si la declaración prestada en el momento del primer juicio—en que se tenía la mente fresca de los acontecimientos que habían ocurrido—fué la verdad de los hechos.

2. JUICIO—RECEPCIÓN DE EVIDENCIA—OBJECIONES, MOCIONES PARA ELIMINAR Y EXCEPCIONES—OBJECIONES—RENUNCIA (*Waiver*) DEL DERECHO.—Surge una renuncia cuando, sin objeción alguna, un testigo usa para refrescar su memoria la declaración prestada en un juicio anterior.

3. APELACIÓN Y ERROR—REVISIÓN—ERRORES NO PERJUDICIALES—DEBER DEL QUE ALEGA ERROR DEMOSTRARLO.—No hay error ni perjuicio cuando una corte rehusa permitir que un testigo diga lo que un vendedor en perspectiva dijo cuando se le manifestó que el comprador en perspectiva había retirado su oferta de compra, no habiendo demostrado el apelante que tal manifestación estuviera fuera de la regla de que un litigante puede fortalecer su caso con su propia declaración.

Esta es una acción sobre cumplimiento de contrato y da-

ños y perjuicios. La teoría del demandante en su demanda enmendada,—en contraposición a la expuesta en su demanda original en la cual se reclamaba el importe de una fianza que se alegaba fué ofrecida por el demandado a favor de un tercero a quien el demandante había vendídole un establecimiento mercantil,—fué que el demandado había convenido en comprarle las existencias de uná tienda para ser traspasadas a un tercero, es decir, que el demandado compraba para beneficio de otro. La teoría del demandado fué que él nunca había hecho oferta de compra sino que había convenido en garantizar a dicho tercero por $3,000 si la madre política de éste garantizaba por una suma igual, y que al ésta negarse a ello, él retiró su oferta de garantía.

SENTENCIA de *Enrique Lloreda,* J. (Arecibo), declarando sin lugar la demanda, con costas. *Confirmada.*

*Juan B. Soto,* abogado del apelante; *Félix Santoni,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

[1] Rafael San Millán, quien fué testigo en el juicio anterior de este caso, al ser presentado como tal no recordó los hechos, o más bien las conversaciones sobre que él había declarado anteriormente. Se le permitió refrescar su memoria mediante la lectura de las notas taquigráficas del primer juicio. Después declaró en el examen directo como sigue: "Ahora después que he leído las notas taquigráficas que se me han mostrado, yo recuerdo," y procedió a relatar de una supuesta admisión del demandante. En la repregunta el testigo dijo que de su lectura él deducía lo que había declarado anteriormente. Se le preguntó en efecto si ahora recordaba lo que había sucedido o si era porque había leído el récord. Contestó en una forma ambigua. A preguntas de la corte dijo otra vez que él deducía lo que acababa de decir de lo que había leído. Repetidas veces dijo que él deducía la verdad de lo que había leído; que si

no hubiera leído el récord le hubiera sido difícil expresar lo que había sucedido. Se le preguntó qué quería decir con la palabra "deducir" y contestó: "Llegar a la conclusión a que hemos llegado. Yo deduzco después de leer eso (el récord taquigráfico) que lo ocurrido allí fué eso." El apelado sugiere que el testigo también dijo: "Indudablemente que una declaración que presté en aquel momento, que tenía mi mente fresca de los acontecimientos que habían ocurrido fué la verdad de los hechos." El demandante y apelante entonces pidió que se eliminara la declaración del testigo y la corte negó la moción, a lo cual el demandante tomó excepción, señalándolo ahora como error.

El caso de *Putnam* v. *United States,* 162 U. S. 686 es la base principal del apelante. Después de refrescar la memoria de un testigo debió ser su memoria la que hablaba, según resolvió la corte en aquel entonces; así como también que el memorándum presentado debió haber sido prácticamente contemporáneo con los hechos, siendo cuatro meses demasiado tiempo. En el presente caso el récord taquigráfico fué preparado aún más de cuatro meses después de ocurridos los hechos o de celebrarse las conversaciones sobre que el testigo declaraba. Si el caso citado es aplicable no hay duda alguna que ambas contenciones son correctas.

El apelado en contestación a este señalamiento de error, cita el artículo 154 de la Ley de Evidencia, como sigue:

"Art. 154.—A un testigo le es permitido refrescar la memoria respecto a un hecho, con cualquiera cosa que hubiere escrito él mismo o bajo su dirección, al tiempo de ocurrir el hecho, o inmediatamente después, o en cualquiera época en que lo tenía presente en la memoria y sabía que estaba correctamente consignado en el escrito. Pero en este caso, deberá exhibirse el escrito, pudiendo la parte contraria examinarlo, repreguntar al testigo acerca de él, si así lo deseare, y leerlo al tribunal o jurado. Así también podrá un testigo declarar con referencia a dicho escrito, aún cuando no recordare los hechos en cuestión, pero tal evidencia deberá admitirse con cautela."

Excepto que el lenguaje sólo se refiere a un memorán-

dum hecho por un testigo o bajo su dirección y no textualmente a testimonio anterior, nuestra ley escrita es una contestación directa a las contenciones del apelante. California, y Puerto Rico siguiendo a dicho estado, ha cambiado la regla del derecho común envuelta en la cita de la Corte Suprema de los Estados Unidos.

[2] El apelante, un poco tarde, nos parece, también pone en tela de juicio si la prueba en un juicio anterior puede ser usada para refrescar la memoria de un testigo. No parece que en el juicio la moción de eliminación fuera basada en este fundamento. La objeción si es válida, pudo haber sido hecha oportunamente cuando el supuesto memorándum fué primeramente presentado y por consiguiente hubo una renuncia.

No obstante, en California se ha resuelto que las notas taquigráficas de un juicio anterior deben considerarse que se toman "bajo la dirección del testigo." *People* v. *McFarlane*, 138 Cal. 481, 488; *People* v. *Durrant*, 116 Cal. 179, 213. Como nuestra Ley de Evidencia fué tomada de California y la interpretación dada por sus cortes encuentra nuestra aprobación, seguiremos las decisiones de aquel estado.

[3] El tercer señalamiento se refiere a la negativa de la corte a admitir ciertas supuestas "declaraciones en beneficio propio," (*self-serving testimony*). La teoría del demandante fué que el demandado había convenido en comprar las existencias de una tienda para ser traspasadas a Suárez. En otras palabras, que el demandado compraba para beneficio de otro. La teoría del demandado fué que él meramente había convenido en hacerse responsable por $3,000 si la madre política de Suárez se hacía responsable por una suma similar y que cuando ella se negó él también retiró su oferta. Suárez, como testigo del demandante había declarado que Cortés, el demandado, le había dicho a Muñiz que él retiraba su oferta. Entonces, cuando el testigo se

preparaba para declarar lo que había dicho Muñiz en contestación, el demandado se opuso y su objeción fué sostenida.

El apelado llama nuestra atención al caso de *Hausman* v. *Hausling,* 78 Cal. 283, 286 (20 Pac. 570), en el cual se resolvió que a un litigante no se le permitía fortalecer su caso con sus propias manifestaciones, bien sean escritas o verbales. Los casos corrientes en que se excluyen declaraciones de esta clase, surgen generalmente en ausencia de una de las partes. La teoría era que Muñiz con su silencio parecía haber consentido a las manifestaciones de Cortés de retirar su oferta; pero según los hechos que tenemos a la vista, no podemos ver que tal silencio significara algo parecido a un abandono por parte de Muñiz de su alegación de que Cortés había convenido en comprar para Suárez. Además, la defensa no era que Cortés había retirado su oferta de compra, sino que nunca había hecho tal oferta. El informe de lo que Muñiz pudiera haber dicho no tiende ni a probar la reclamación de Muñiz ni a dejar de probar la defensa de Cortés, y la declaración parecería caer dentro de la regla sentada por el caso de California.

Sin embargo, si tuviéramos mayores dudas y se nos mostraran casos en que tal prueba fuera admisible, todavía nos sentiríamos obligados a sostener la actuación de la corte. El demandante entonces debió haber dicho a la corte lo que se proponía demostrar con la declaración del testigo, de modo que hubiera una oportunidad de juzgar la admisibilidad de la declaración propuesta. Se tomó excepción, sin poner a la corte en una situación apropiada. No encontramos que haya habido error o perjuicio. Para demostrar la teoría de la falta de perjuicio, se permitió posteriormente que el testigo declarara que Muñiz protestó por la razón de que él le había entregado el establecimiento al testigo. De modo que ni en los autos ni en el alegato del apelante aparece indicación o teoría alguna que demuestre que hubo perjuicio contra el demandante.

El segundo y cuarto señalamientos de error pueden ser considerados conjuntamente.  Se refieren a la prueba y su apreciación por la corte.  Este es uno de los muchos casos en que si la corte hubiera resuelto el caso a favor del demandante, quizás no hubiéramos podido declarar que cometió error.  En la vista anterior de este caso indicamos algo sobre este particular.  Hubo bastante prueba tendente a demostrar que Cortés convino en comprar el establecimiento para Suárez, y que Muñiz entregó el establecimiento a Suárez en virtud de las promesas hechas por Cortés.  También hubo prueba tendente a demostrar que se practicó un inventario de las existencias, que Cortés estuvo presente, y que tenía conocimiento de todo lo concerniente al inventario.  Hubo por lo menos tres testigos, incluyendo dos de las partes principales, que declararon que Cortés convino en comprar los efectos de Muñiz para Suárez, y que Muñiz permitió que Suárez los tomara debido a las promesas de Cortés.  Por otra parte, Cortés niega todas estas manifestaciones, y su declaración corroborada por las de otros testigos, fué creída por la corte.  Esta estimó que la actitud actual del demandante era totalmente inconsistente con la actitud asumida por él al radicar su demanda original, y que tenía entero conocimiento de la naturaleza de dicha demanda original, o sea, que Cortés convino en servirle de fiador a Suárez.  Esta relación de hechos fué traída a luz por las declaraciones de San Millán, Marshal de la corte, y por Miranda, el abogado en el pleito original.  Generalmente, y en particular de sus declaraciones, la corte estimó que Cortés nunca había convenido en comprar los efectos para Suárez.  La corte también sugirió que probablemente fuera el artículo 440 del Código de Comercio el que hizo cambiar al demandante de actitud, ya que de acuerdo con dicho artículo se exige que el contrato de fianza conste por escrito.

Durante la presentación de la evidencia, y especialmente cuando Suárez estaba declarando, se le preguntó qué benefi-

cios derivaría Cortés al efectuarse la venta a Suárez. Evidentemente ningunos. Desde luego, si se indujo a Muñiz a hacer entrega a Suárez debido a las promesas de Cortés, la falta de beneficio a éste apenas tendría importancia. Sin embargo, tal falta de beneficio era también una cuestión que debió ser apreciada por la corte. Hay alguna probabilidad de que Cortés dió algunos pasos para ayudar a Suárez, a quien él también había ayudado antes, pero en vista de las conclusiones a que llegó la corte, no hallamos lo suficiente en los autos que nos haga llegar a una conclusión distinta, por lo que *la sentencia debe ser confirmada.*