José DE GRACIA, demandante y apelado, *v.* GERARDO GUAR-
DIOLA, demandado y apelante; José DE GRACIA, deman-
dante y apelante, *v.* GERARDO GUARDIOLA, demandado y
apelado.

Nos. 4299 y 4276.—*Visto:* Diciembre 16, 1927. *Resuelto:* Marzo 8, 1928.

1. NEGLIGENCIA—ACTOS U OMISIONES CONSTITUTIVOS DE NEGLIGENCIA—MATERIAS
   O SUBSTANCIAS PELIGROSAS, MAQUINARIAS U OTROS MEDIOS—CUIDADO RE-
   QUERIDO.—Una guagua está en el deber de caminar por una cálle en forma
   tal que no cause daño a las personas que caminan por la acera, y cuando
   se echa tanto hacia la orilla de la calle que parte del vehículo ocupa la
   acera porque camina una persona y le causa daño, el permitir que el cuerpo
   de la guagua ocupe la acera, en ausencia de demostración alguna de que
   existiera una emergencia justificativa de esa penetración, es negligencia.
2. NEGLIGENCIA—ACCIONES—JUICIO, SENTENCIA Y REVISIÓN—APELACIÓN—REVI-
   SIÓN—APRECIACIÓN DE LAS PRUEBAS—NEGLIGENCIA CONTRIBUTORIA.—Cuando
   la teoría de negligencia del caso del demandante es el permitir que el cuerpo
   de la guagua del demandado sobresaliese hacia la acera—causando daños al
   primero que caminaba por la misma—y el demandado no ataca tal teoría pero
   sostiene que la causa próxima del accidente fué que el demandante se bajó
   de la acera a la calle, el conflicto es propiamente decidido en contra del
   demandado sobre una preponderancia de la prueba.
3. TESTIGOS—CREDIBILIDAD, IMPUGNACIÓN, CONTRADICCIÓN Y CORROBORACIÓN—MA-
   NIFESTACIONES INCONSISTENTES HECHAS POR TESTIGOS—MANIFESTACIONES O
   DECLARACIONES HECHAS POR ESCRITO—DEBER DE MOSTRARLAS AL TESTIGO.—
   Cuando se deniega la admisión de un escrito, identificado en la repregunta
   de un testigo, no por el fundamento de que fuera ofrecido en el momento
   de la repregunta sino por el de que era incompetente para contradecir un
   testigo a menos que fuere mostrado a éste y se le diera oportunidad de
   explicarla, la actuación de la corte es correcta.
4. APELACIÓN Y ERROR—ALEGATOS—DISCUSIÓN O ARGUMENTACIÓN DE ERRORES—
   OMISIÓN DE DISCUTIR ERRORES SEÑALADOS Y EFECTO.—Cuando la cuestión
   de la cuantía de la indemnización sólo se señala como error, pero no se
   discute en el alegato, la sentencia de la corte inferior a ese respecto no
   debe ser alterada.
5. APELACIÓN Y ERROR—REVISIÓN—DISCRECIÓN DE LA CORTE INFERIOR—CONDENA
   EN COSTAS Y HONORARIOS.—Cuando una propia investigación hubiera con-
   vencido a una parte que no había una defensa meritoria a la acción y con-
   tinúa esta a una sentencia final adversa a él, al condenarlo la corte al pago
   de costas y honorarios de abogado no ejerce indebidamente su discreción.
6. APELACIÓN Y ERROR—RESOLUCIÓN Y DISPOSICIÓN DEL CASO—MODIFICACIÓN—
   MODIFICACIÓN DE LA CANTIDAD A RECOBRAR—AUMENTO DE LA MISMA—IN-
   DEMNIZACIÓN POR DAÑOS Y PERJUICIOS.—La cuantía de la indemnización
   queda por lo general a la aprobación del jurado o de la corte, según sea
   el caso, y una corte de apelación no tiene derecho a aumentarla.

EN MOCIÓN DE RECONSIDERACIÓN.

7. APELACIÓN Y ERROR—LISTAS *(Dockets),* CALENDARIO Y PROCEDIMIENTOS PRE-

LIMINARES A LA VISTA—NOTIFICACIÓN DEL SEÑALAMIENTO PARA VISTA.—La actuación del Secretario del Supremo al notificar los señalamientos es una cortesía y no un deber; los abogados, como funcionarios del tribunal, están obligados a saber las fechas para las cuales se han señalado sus apelaciones.

8. APELACIÓN Y ERROR—VISTA Y NUEVA VISTA *(Rehearing)*—INCOMPARECENCIA DE LOS ABOGADOS—ABOGADO ASOCIADO.—La falta de comparecencia de un abogado asociado puede imputarse al abogado del caso que lo dejó.

9. NEGLIGENCIA—ACTOS U OMISIONES CONSTITUTIVOS DE NEGLIGENCIA—MATERIAS O SUBSTANCIAS PELIGROSAS, MAQUINARIAS U OTROS MEDIOS—CUIDADO REQUERIDO.—Ningún conductor de un vehículo tiene derecho a introducir parte alguna de su vehículo en la acera si, al hacerlo así, lesiona a otra persona excepto en caso de emergencia; él debe evitar que la parte del vehículo que sobresale de las ruedas penetre en la acera.

10. APELACIÓN Y ERROR—RESOLUCIÓN Y DISPOSICIÓN DEL CASO—MODIFICACIÓN—MODIFICACIÓN DE LA CANTIDAD A RECOBRAR—AUMENTO DE LA MISMA—INDEMNIZACIÓN POR DAÑOS Y PERJUICIOS.—El Tribunal Supremo no intervendrá en la discreción de la corte sentenciadora si la cuantía de la indemnización es ligeramente excesiva.

11. APELACIÓN Y ERROR—ALEGATOS—DISCUSIÓN O ARGUMENTACIÓN DE ERRORES—OMISIÓN DE DISCUTIR ERRORES SEÑALADOS Y EFECTO.—Cuando el apelante, según dice en la exposición del caso, deja la cuestión de la indemnización concedida para discutirlo en su alegato al contestar la contención del apelado, y no lo hace, una moción de reconsideración es demasiado tardía para levantar tal cuestión.

12. COSTAS—NATURALEZA, FUNDAMENTOS Y EXTENSIÓN DEL DERECHO EN GENERAL—CULPABILIDAD O TEMERIDAD.—Cuando un demandado cree tener derecho a que las ruedas de su vehículo corran por el borde de la acera por donde caminan personas o donde están paradas, aún cuando el cuerpo del vehículo penetre en la acera, y lo hace así fundado en tal teoría y arrolla a una persona en la acera, él es culpable en gran parte, y siendo negligente, la corte en el ejercicio de su discreción tiene derecho a imponerle las costas tomando en consideración el grado de temeridad.

SENTENCIA de *Domingo Sepúlveda*, J. (San Juan), declarando con lugar la demanda, con costas, gastos, desembolsos y honorarios de abogado. *Confirmada.*

*F. Soto Gras,* abogado del demandado-apelante-apelado; *Blondet y Campillo,* abogados del demandante-apelado-apelante.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Por la prueba presentada en este caso la corte tenía derecho a creer que José de Gracia fué lesionado debido a que una guagua se echó tanto hacia la orilla de la calle que parte del vehículo ocupó la acera por que caminaba el referido José de Gracia. La corte resolvió el caso a favor del

demandante, dictando sentencia condenando al demandado a pagarle la suma de $10,000, y ambas partes han apelado.

A pesar de los comentarios de la Corte de Circuito de Apelaciones y de este tribunal, los abogados han elevado dos transcripciones separadas, cuando una hubiese bastado.

[1] Entendemos que la teoría de negligencia en este caso fué que a pesar de lo estrecho de la calle en que ocurrió el accidente, la guagua estaba en el deber de caminar por ella en forma tal que no causara daño a las personas que caminaban por la acera. En otras palabras, que era un acto de negligencia permitir que el cuerpo de la guagua sobresaliese hacia la acera. De acuerdo con la preponderancia de la prueba, delante iba un tranvía eléctrico, y la corte aparentemente creyó que la guagua trataba de pasarle a dicho tranvía, por la derecha. Convenimos con el demandado apelante en que había espacio suficiente para los dos vehículos en la Calle Salvador Brau frente a la Cafetera, y tan es así que él no nos ha demostrado razón alguna para caminar tan pegado a la acera, según la prueba tendió a demostrar. Aun si el tranvía hubiera venido atrás, según declararon algunos testigos del demandado, no habría motivo alguno para echarse tan a la derecha que se hiciera que parte de la guagua penetrara en la acera. No se demostró que existiera emergencia justificativa de esta penetración.

[2] Convenimos con el demandado-apelante en que no se demostró ningún otro acto de negligencia fuera del que acabamos de describir. El no ataca esta teoría de negligencia, pero sostiene que la causa próxima del accidente fué que el demandante se bajó de la acera a la calle. Sobre este punto surgió un conflicto que la corte inferior resolvió en contra del demandado al hacer un examen de la prueba que nos parece satisfactorio. La preponderancia de la prueba favoreció al demandante. Por tanto, no hubo negligencia contribuyente de su parte. Aún si el demandante hubiese descendido a la calle, el demandado nos ha dejado

de satisfacer de que tal acto necesariamente constituía negligencia. Puede haber sido un acto de negligencia, pero el demandado estaba en verdad obligado a demostrar que lo era. Si la guagua no se hubiese acercado tanto a la acera, el bajarse de la acera a la calle no habría tenido serias consecuencias. Estas consideraciones resuelven los dos primeros señalamientos de error.

[3] El tercer señalamiento se refiere a la negativa de la corte a admitir un escrito contradiciendo la declaración de determinado testigo. Estamos muy de acuerdo con el demandado en que un escrito que es identificado en la repregunta de un testigo no necesita ser ofrecido como prueba en el momento en que tal repregunta se hace, y que puede reservarse para cuando el demandado presente su prueba, pero la corte inferior no resolvió lo contrario. Meramente decidió que el escrito no era en forma alguna prueba de impugnación competente, a menos que fuera mostrado al testigo y se le diera oportunidad de explicarse, según lo dispone el artículo 159 de la Ley de Evidencia.

[4] Se señala como error el haberse concedido una indemnización de $10,000, pero como el demandado no discute esta cuestión, no vemos razón alguna para alterar la sentencia de la corte inferior a este respecto.

[5] El quinto señalamiento de error se refiere a la cuestión de costas y honorarios de abogado. Somos de opinión que una investigación hecha por el demandado debió haberlo convencido de que en verdad no tenía una defensa meritoria, y que, por tanto, al condenarlo la corte al pago de las costas y honorarios de abogado, no ejerció indebidamente su discreción.

[6] La apelación del demandante es bien extraordinaria. Sostiene que la sentencia por $10,000 es enteramente inadecuada, y que la corte debió haberle concedido por lo menos la cantidad de $26,000. Durante la vista de este caso, preguntamos a los letrados del demandante si habían hallado algún caso en que las cortes de apelación de los Estados

Unidos hubieran aumentado en esa forma, o en alguna otra forma, la cantidad impuesta por la sentencia de una corte inferior. A nuestro entender, contestaron que en su alegato citaban casos al efecto, pero no hemos hallado ninguno. La explicación corriente de nuestra pregunta es que en los Estados Unidos la cuantía de la indemnización queda por lo general a la apreciación del jurado, y una corte de apelación no tiene el derecho de aumentarla. Sin embargo, el demandante-apelante sí dice que en los Estados Unidos se conceden veredictos o sentencias por sumas mayores cuando el demandante prácticamente alega una incapacidad total, como en este caso.

El demandante era un sargento del ejército de los Estados Unidos. Ganaba $116 mensuales, y dentro de pocos años hubiese estado en condiciones de jubilarse y de recibir una pensión de $114. Calcula que a partir de su edad actual de 48 años hasta que se hubiere jubilado a los 54, habría recibido más de $8,000. Entonces dice que esperaba vivir trece años más después de su jubilación, y que durante ese período había que pagársele una suma en exceso de $18,000.

El objeto de la ley es indemnizar, y poner al demandante más o menos en una situación similar a la que hubiese estado si no hubiera ocurrido el accidente. No tiene por objeto mejorar su posición. En Puerto Rico, no deja de ser corriente obtener el 10 por ciento sobre las inversiones. La cantidad de $26,000 así invertida produciría $2,600 al año, lo que sería el doble de lo que percibía el demandante. No sólo es esto así, sino que el demandante, al final de los 19 años, tendría aún los $26,000, mientras que recibiendo su sueldo corriente, probablemente lo hubiese gastado todo y muy poco o nada le quedaría. La mejor forma de considerar esta cuestión es imaginarnos un fondo de amortización (*sinking fund*) o la amortización de una deuda, es decir, comenzar con determinado fondo, agregarle los intereses y deducir los egresos anuales en forma tal que el

capital y los intereses queden eventualmente absorbidos y nada quede prácticamente al finalizar un período de tiempo determinado, v. g., los 19 años que esperaba vivir (*expectancy*) el demandante, según manifestó. $10,000 así invertitidos no se apartarían mucho de producirle al demandante, más o menos, año tras año, la misma cantidad que él había estado recibiendo de los Estados Unidos como sargento del ejército. Declaró el demandante que, debido a su incapacidad, solamente podía ganar de $8 a $10 mensuales, pero no podemos asegurar que, de cuando en cuando, no pueda ganar un poco más. Igualmente, la prueba tendió a demostra que había probabilidades o posibilidades de que el demandante obtuviera una pensión del Gobierno de los Estados Unidos por su incapacidad.

Bajo las circunstancias, no vemos razón alguna para intervenir con la discreción de la corte inferior al fijar la indemnización en $10,000.

*Debe confirmarse la sentencia en cada caso.*

### EN MOCIÓN DE RECONSIDERACIÓN

Opinión del tribunal emitida por el JUEZ ASOCIADO SR. WOLF.

[7] Se trata de una moción de reconsideración. La vista del caso había sido señalada originalmente para el 16 de diciembre de 1927. Debido al hecho de que sólo cuatro jueces componían el tribunal, y toda vez que nuestro colendario estaba sobrecargado más de lo corriente, pospusimos, en unión de otros casos, la vista de esta apelación. Habiendo presentado una moción de reconsideración los letrados del demandante, señalamos nuevamente el caso para la fecha para la cual había sido señalado originalmente, o sea, para el 16 de diciembre de 1927. El nuevo señalamiento fué debidamente notificado al apelante. Nadie compareció a nombre del demandado y apelante durante la vista. El abogado del apelante se queja de que la moción solicitando el nuevo señalamiento no fué notificada ni a él ni a su cliente.

Sin embargo, el señalamiento sí le fué notificado, y eso era todo lo que se necesitaba. Posiblemente, eso es un poco más de lo necesario, toda vez que la actuación del secretario de este tribunal al notificar los señalamientos, es una cortesía y no un deber. Los abogados, como funcionarios que son de la corte, están obligados a saber las fechas para las cuales se han señalado sus apelaciones.

[8] La notificación de esta corte fué enviada el 29 de noviembre de 1927. Los señalamientos y los nuevos señalamientos son hechos por este tribunal de propia iniciativa, o quizás *ex parte.* Debe notarse que la resolución original de esta corte posponiendo la fecha se hizo de propia iniciativa. El apelante tuvo tiempo suficiente desde el 29 de noviembre al 16 de diciembre para solicitar que el señalamiento se hiciera para otra fecha. Es cierto que el abogado particular del demandado estaba ausente, pero la corte no puede tomar conocimiento de las ausencias, y el abogado no se queja de que la notificación no llegara a su oficina como de costumbre. No vemos en todo esto otra cosa que la falta de comparecencia del abogado asociado o los abogados asociados. Esta falta puede imputársele al abogado en la misma forma en que puede imputársele al cliente.

[9] Podríamos ordenar la celebración de una nueva vista y tomar en consideración la situación del abogado si tuviésemos dudas acerca de la resolución de este caso. No las tenemos. Después de sugerir por varias ocasiones que este tribunal dejó de prestarle la debida atención a su alegato, el abogado admite que la principal cuestión ante esta corte es una de hecho, o sea, si el demandante, quien fué arrollado por la guagua del demandado, abandonó o no la acera. La corte inferior llegó a la conclusión general y definitiva (*ultimate*) de que el demandante estaba parado en la acera al ser lesionado. Al confirmar la conclusión general de la corte inferior, nuestra resolución principal giró sobre ese punto. El apelante insistió en su alegato, e insiste también en su moción de reconsideración, en que el demandante se

tiró a la calle. El letrado se queja del comentario hecho en nuestra opinión de que él no atacó la teoría de negligencia. Su llamado ataque principalmente se dirige a insistir de nuevo en que el demandante abandonó la acera. Generalmente, cuando el caso gira sobre un conflicto de prueba, y el resultado final de la contención del apelante es que debe darse crédito a sus testigos más bien que a los de la parte contraria, no creemos necesario analizar las declaraciones de los testigos, una por una.

Hace algún tiempo, en el caso de *Muñiz* v. *Cortés*, 36 D.P.R. 182, dijimos algo al efecto de que si la conclusión de la corte inferior hubiese sido en sentido contrario, no la hubiésemos alterado. Este es el comentario que frecuentemente hacemos en nuestras opiniones o en nuestras discusiones. En dicho caso analizamos la prueba un poco. La Corte de Circuito de Apelaciones de los Estados Unidos, al confirmar nuestra sentencia, dijo que habíamos llegado a una conclusión con alguna vacilación. En realidad de verdad, el caso siguió el principio tan frecuentemente enunciado por nosotros de que, no habiéndose demostrado que mediara pasión, parcialidad, prejuicio o grave error, este tribunal no alterará la conclusión de la corte sentenciadora. El presente recurso de apelación podría decidirse fundándose en ese solo principio, pero vamos aún más lejos y decimos que de la prueba no vemos que la corte pudiera haber llegado a una conclusión distinta. Aunque incurramos en una repetición, podría decirse que éste fué el *ratio decidendi* de nuestra opinión en oposición a la contención del apelante. Todo lo que se dijo referente a negligencia contributoria fué un mero *obiter*. En el alegato del apelante no se hizo un análisis tal de las declaraciones de los testigos que nos hiciera dar paso a algunas dudas. Si revisamos la prueba más detenidamente, lo que hacemos es tratar de despejar cualquier impresión que pudiera producirse cuando un abogado tan ilustrado insiste en que la corte no consideró cuidadosamente su alegato.

Además del demandante mismo, hubo cinco testigos oculares del accidente que declararon a favor de él. Cada uno de ellos dijo que el demandante estaba parado en la acera, y lo dijo claramente. Algunos de ellos ni siquiera fueron repreguntados sobre este punto, y uno de ellos no fué repreguntado en absoluto. Manifestaciones precisas de los testigos pueden hallarse en las páginas 26, 62, 65, 72 y 79 de los autos mecanografiados y tal vez en otros sitios.

Hubo tres testigos del demandado que declararon que el demandante descendió a la calle. El número de testigos, desde luego, no determina la preponderancia de la prueba, pero se nos ocurre que los testigos del demandante en su totalidad estaban en mejor posición para juzgar el accidente que los testigos del demandado. Uno de los testigos del demandado fué un policía, quien iba en la guagua que ocasionó el accidente. De su declaración, y dada la posición que él ocupaba no podemos ver cómo pudo estar seguro de que el demandante se bajó a la calle. La guagua no estropeó al demandante con la parte anterior, sino con el lado. Según la prueba incontrovertida, el demandante fué hallado después de haber sido arrollado, con parte de su cuerpo en la acera y con las piernas en la calle. Después que ocurre un accidente, los testigos más honrados pueden tener una impresión errónea debido a lo ocurrido inmediatamente después.

Los testigos del demandante fueron mejores. Todos se encontraban en la acera, y sus oportunidades de observación eran buenas. Tres de ellos eran abogados bien conocidos. Uno de ellos fué impugnado puede decirse que solamente por el interés que tenía en el caso. Era uno de los letrados del demandante. Al igual que muchas otras cortes, deseamos indicar que un abogado debe evitar ser testigo en un caso en que comparece como abogado. Las cortes inglesas son sumamente estrictas en cuanto a este extremo. Sin embargo, en este caso no había razón alguna para sospechar de la veracidad del testigo, según lo demos-

traría un examen de los autos. Además del demandante, hubo dos testigos más cuyas declaraciones tenderían a demostrar que el demandante estaba realmente en la acera al ser arrollado. Aunque uno de estos testigos pueda haberse mostrado algo dudoso en su declaración, la corte tenía perfecto derecho a creer la descripción que él hizo del accidente. El testigo insistió en que a pesar del hecho de que el demandante estaba cediéndole el paso a una dama no abandonó la acera.

Si en esta reseña hemos dado posiblemente mayor énfasis a las declaraciones de algunos de los testigos, la corte inferior tenía derecho, según aparece de los autos, a hacer esto y aun más, ya que tuvo los testigos ante sí. Esa es la razón por la cual, como la corte inferior llegó a una conclusión general y definitiva, este tribunal se limitó en su opinión original a decir que la corte de distrito había hecho un examen de la prueba que nos parecía satisfactorio. Revisando esa opinión a la luz de la experiencia posterior, no hallamos que sea inadecuada en absoluto.

En nuestra opinión dijimos:

"Convenimos con el demandado apelante en que no se demostró ningún otro acto de negligencia fuera del que acabamos de describir. El no ataca esta teoría de negligencia, pero sostiene que la causa próxima del accidente fué que el demandante se bajó de la acera a la calle. Sobre este punto surgió un conflicto que la corte inferior resolvió en contra del demandado al hacer un examen de la prueba que nos parece satisfactorio. La preponderancia de la prueba favoreció al demandante. Por tanto, no hubo negligencia contribuyente de su parte. Aún si el demandante hubiese descendido a la calle, el demandado nos ha dejado de satisfacer de que tal acto necesariamente constituía negligencia. Puede haber sido un acto de negligencia, pero el demandado estaba en verdad obligado a demostrar que lo era. Si la guagua no se hubiese acercado tanto a la acera, el bajarse de la acera a la calle no habría tenido serias consecuencias. Estas consideraciones resuelven los dos primeros señalamientos de error."

Las palabras "aún si el demandante hubiese descendido

a la calle,'' etc., debieron haberse puesto en un párrafo separado. Sin embargo, fueron un mero *obiter*. Si bien creemos que podríamos justificar nuestra indicación de que el que una persona ponga un pie en la calle puede no constituir negligencia contribuyente, es enteramente innecesario discutir tal cuestión, toda vez que el hecho probado es que el demandante no descendió a la calle.

En su moción, el apelante infiere que al igual que los peatones tienen derecho a la acera, un vehículo tiene absoluto derecho a la calle. Si el apelante quiere decir con esto que bajo cualesquiera circunstancias el conductor de un veculo tiene derecho a hacer que las ruedas del mismo rocen con el borde de la acera, está claramente equivocado. El principio fundamental de la ley substantiva es *sic utere tuo ut alienum non laedas* . . . Ningún conductor tiene derecho a introducir parte alguna de su vehículo en la acera, si al hacerlo así lesiona a otra persona, excepto en casos de emergencia, según sugerimos en nuestra opinión. La corte resolvió que parte del cuerpo de la guagua ocupó la acera. Una pequeña parte de una guagua, tal vez seis o nueve pulpulgadas, o a veces un poco más, sobresale de las ruedas. El conductor del vehículo debe evitar que esta parte penetre en la acera. Uno de los testigos, el Sr. Lastra Charriez, creyó que la guagua iba a chocar con él, y toda la prueba tiende a demostrar que la guagua se acercó tanto a la acera como le fué posible, sin que las ruedas penetraran materialmente en ella. Esta es la negligencia que de los autos aparece, aunque realmente no fué la discutida en estos términos en la opinión de la corte inferior. Si la contención aparente del demandado es correcta, entonces un camión cargado de maderas o de muebles podría hacer que la madera o los muebles que lleva molesten a los viandantes que van por la acera. La prueba indica que la calle en sí tiene diecinueve pies de ancho; que hay once pies desde el borde de la acera a la vía del tranvía eléctrico. El demandado tenía amplio espacio para conducir su vehículo por

esta calle en que solamente se viaja en una dirección.
Existe alguna posibilidad de que el conductor de la guagua
del demandado estuviese ansioso de pasarle al tranvía eléc-
trico mientras éste estaba parado, pero el deber de todo
conductor es esperar el tiempo necesario, a fin de no cau-
sar daños a ninguna persona que esté en la acera. La
acera tiene tres pies de ancho; la distancia total de casa a
casa es veinticinco pies. El tráfico está congestionado, en
ningún sitio más que en el sitio y a la hora en que ocurrió
el accidente, es decir, a las doce del día. Los conductores
de vehículos deben tomar precauciones extraordinarias al
ir por esta calle estrecha y congestionada, para evitar causar
daño a los peatones. Cuando una persona que va por la
acera es arrollada por una guagua que pasa, la inferencia
inevitable es que la guagua, debido a las condiciones del
tráfico, se hallaba en un lugar en que no tenía derecho a es-
tar. En esencia, ésta es la conclusión a que llegó la corte
sentenciadora.

[10, 11] La cuestión de la indemnización no fué discutida
en el alegato del demandado y apelante. Es cierto que en
la exposición del caso el demandado dijo que discutiría este
punto en su alegato al contestar las contenciones del de-
mandante, quien también había apelado del montante de la
indemnización concedídale. Nuevamente en su moción de
reconsideración el apelante nos hace referencia a la mo-
ción que había radicado previamente. Es innecesario decir
que el sitio para discutir los errores señalados por el ape-
lante es su propio alegato como tal apelante. Entrando li-
geramente en la cuestión de indemnización por concepto
de daños y perjuicios, algunos de los miembros de este tri-
bunal pueden tener dudas respecto a si la indemnización
concedida no fué algo excesiva, pero la mayoría tiene una
opinión distinta, y ninguno de nosotros estaría dispuesto a
intervenir con la discreción de la corte sentenciadora si la
cuantía de la indemnización es ligeramente excesiva. Refi-
riéndonos al caso número 4276, hallamos que el demandado

nunca contestó el alegato del demandante, y una moción de reconsideración es demasiado tardía para levantar las cuestiones que el apelante se proponía levantar.

[12] El apelante también se queja de la imposición de las costas. Fuimos de opinión de que una investigación por parte del demandado debió haberlo convencido de que no tenía una defensa meritoria, y que, por tanto, la discreción de la corte al imponerle las costas y honorarios de abogado no fué ejercida indebidamente. Nuestra opinión era, y aún lo es, que un examen de los hechos por el demandado debió haberlo convencido de que el demandante nunca abandonó la acera. Creemos que le era muy posible al demandado averiguar este hecho. No obstante, no fué nuestra intención limitar la cuestión de la imposición de costas contra el demandado solamente a la posibilidad de que él pudiera descubrir los hechos realmente ocurridos. Si resulta que el demandado fué en realidad negligente, la corte, en el ejercicio de su discreción, tiene derecho a imponerle las costas, tomando en consideración el grado de temeridad. De otro modo, en un gran número de casos, nunca se podrían imponer las costas a un demandado cuando el demandante careciera por completo de culpa. No deseamos hacer demasiado hincapié sobre este punto, pero si el demandado insiste en que tiene derecho a que las ruedas de su vehículo corran por el borde de la acera por donde caminan personas o donde están paradas, aun cuando el cuerpo del mismo penetre en ella, y que lo hizo así fundado en tal teoría, entonces él es culpable en gran parte. Por tanto, es innecesario que este tribunal discuta extensamente lo que hemos resuelto en otros casos. El caso de *Josefa Candal de López* v. *Sociedad Española de Auxilio Mutuo y Beneficencia,* resuelto el 16 de marzo de 1928, fué muy excepcional. Dijimos claramente en nuestra opinión que se trataba de tal caso excepcional, y a él no se puede acudir como precedente para la presente situación en que la corte

inferior y este tribunal han llegado a la conclusión de que el demandado es culpable de temeridad.

*Debe declararse sin lugar la moción de reconsideración.*